May it please the court, my name is Beavis Schock. I represent Gregory Clark in this matter. The first issue is a stop by the side of an arrest area in which the officer ran my client Mr. Clark. I know of no case asserting that a running action as opposed to just asking for the ID and getting it back is anything other than a than a actual seizure. This point does however have two parts. The first part is was he seized and the second part is was there reasonable suspicion for the seizure. And the third part would be whether that was clearly established. Well and I'm gonna be focusing on the cases because I think that's where the action is your honor and I appreciate your your thought on that. Let's look at at the Palmer case Supreme Court you're not free to go. I take the position my client takes the position that when a officer is actually running the subject that and by running I mean calling dispatch and asking and giving the information on it on the license and all that. You're not free to go because the the officer has the clients or the subjects identification. In the Black case says that taking property is a that running somebody is a show of authority. So I conclude that there was a seizure in this case. Now as to whether there was reasonable suspicion to justify the seizure we have that there were shots fired. Allegation of shots fired of officers came to the scene. That's obviously very serious and requires a response from the law enforcement. There are children involved. It's I mean it's very serious. We don't in any way dispute that. What was my client doing? He was at in the rest area 12 minutes later. The cut the officers had to drive 10 miles due to your U-turns and that plus the time for the report. He was on the phone. He was doing nothing. When the officers walked up he could tell they were officers and he immediately handed over his IDs. Now there's a case Daughty that says the initial response is relevant. His initial response was wholly cooperative and in fact he informed the officers by handing the concealed carry card that he had a weapon. He had his retired military ID. These all suggest that he was completely cooperative at the beginning. I draw in my client's favor and justifies the denial of qualified immunity. In that case there was the officers were speaking to a young man and another person the subject in the plaintiff in the case was somewhat nearby. The officers walked up. The young man answered the questions that he was asked just like my client and he was cooperative in every way. He was arrested. Qualified immunity was denied. I'd contrast U.S. versus Stewart which is the district court's case where the subject was in a car in an area known for robberies and they were fidgety and they had a story that didn't match up. When we look at these cases this story's not matching up becomes important. My client's statements to the officers were wholly consistent with the facts as the officers knew them. Therefore I believe under the Walker case qualified immunity should be denied because it really is so close in the facts. Obviously under the Ziegler case it has to be beyond debate. Bernicall clear in light of existing law. So is it your position that anytime officers request identification that that's a seizure? Absolutely not your honor. I just draw the distinction under Delgado asking for an ID is not a seizure. It's the sending for feedback from the department. Correct because that's the moment when the client can't leave. It's when the officer has shown authority and the reason he can't leave is he can't leave without his driver's license. He says he can't abandon all his property. What about the fact that he volunteered it in this case and they didn't ask for it? Isn't that some suggestion of consent? Well I think there's a strong consent for the Delgado interaction. In other words the the the consent there is you may know who I am. Mr. Gregory could a reasonable officer understand him to be saying here's my ID do what you need to do with it? Well I don't think so because the case law doesn't give the officer that power. Once the officer takes the next step he has shown that authority and if we go with the theory that you just approached your honor then the incentives are all improper for subjects. We want subjects when an officer walks up to say how may I help you here's my ID here's who I am. I mean these are things which reduce tension which enable officers to do their job. If suddenly cooperating becomes a way that you you are now subject to additional power by the state I think that would put incentives in the wrong place. I might go on to the detention at the exit. There are two issues here avoiding as opposed to fleeing and provoked and unprovoked. After the interaction with the ID my client said why did you run me? The officer said and he admitted this was not true but it's something that he did for sort of verbal judo you might say well my boss wants to know who I talked to and the and then this my client says I don't think you would have run me if I were someone else and then the officer said in a very angry tone don't play the race card with me I'll get to that assuming I have time when we get to the equal protection claim and then the officers went into the building at the rest area they didn't tell him to stay he didn't rush away he sat he sat and talked on the phone some more time he his car didn't squeal the tires he just drove off when the officers had completely disappeared surely there's no suspicion from any of that and then the then they come back out and they see he's left and they start following him now the ward law case is the leading case and it says that headlong flight is creates reasonable suspicion but also talks about this issue of provoked and unprovoked I assert my client did not have headlong flight all he did was avoid he he does go up the ramp he goes over and goes back south after he had told the gentleman he was going to Chicago so he's going back the other way but he doesn't go wherever he wants right there's no restriction on where anybody can go but all that was was avoiding but of great importance is that the officers following him provoked him to make his decision so that takes the ward law case and makes it in my client's favor and that is why this going up and over does not entitle the officers to qualified immunity I draw the court's attention to that's a fourth ninth circuit case admittedly but the subject went around he didn't violate any laws but he sort of kept making turns and then he parks behind a dumpster and that's that was found to be not to create reasonable suspicion the Wong Sun case is a supreme court case that's the one where the officer appears at the Chinese laundry at six in the morning and says hey I have my ticket I want my laundry and the subject says or the the owner of laundry says well we open at eight sir so come back and then the officer says well I'm really a policeman and then Mr. Wong Sun runs to the back and so the question there is was it provoked and the answer was that the conduct of the officer provoked Mr. Wong Sun to run to the back of his place because because they had engaged in this ruse in my case our case the plaintiff's case here the appellant the action was provoked by the officer following him don't forget it's not just following but when my client goes up the ramp at the immediate north exit they followed him up there what were the facts in ward law wasn't the officer following the guy um where they're walking along in the street and the guy takes off running yeah I think that's the one where uh isn't that the same kind of provocation the officer it's because of the taking off issue in other words there's this idea that the officers come up and the subjects just run in all directions right away so that's different than my your man crossed over and went back the other way which could be viewed as an evasive maneuver oh we absolutely acknowledge that it's an evasive maneuver but we assert that it is avoiding which under ward law one may do as opposed to fleeing which one may not do I mean that well the distinction is very strong in the law your honor okay um I'd like to go to my excessive force claim if I may so the excessive force claim so what's your point then on the exit ramp that there was no reasonable suspicion at all at that point to seize him well that's correct out of line absolutely and in fact the officer followed him for 19 miles southbound and then my guy pulled over um in other words but what I'm trying to say your honor is that the my client had a right to avoid the police he there'd been an uncomfortable interaction you have a right after you've had an uncomfortable interaction to avoid the police that's normal human behavior and he had no obligation to continue north to Chicago he could go anywhere he wants I'm gonna be very very brief on this excessive force matter I've only got three and a half minutes left but just to say that is pointing a gun excessive is is pointing a gun force yes or no is the first question and the second question is was it the force justified in this case in this case my client had his hands out the window of the car and the officers uh his his body camera showed in the reflection of the truck that they had their guns up and pointed right at him and I assert that Shannon versus Kohler from this circuit that's the one where the uh ex-cop was in the bar and he was acting in a rambunctious manner but when he he did not in any way uh threaten anybody he didn't resist and the court found that the pointing of the gun was excessive force I don't give up on my other two claims at the end but I only have two minutes left if I may I'd like to reserve my time the court doesn't have any questions thank you I see now miss Kaiser may it please the court my name is Portia Kaiser I represent the Appley detective Austin Clark in action this is a an appeal from the granting of a summary judgment and I think that's important because what we're looking at really is not a dispute about facts here we're talking about a question of law summary judgment was filed at the conclusion and close of all discovery in this case and the district court took the case as properly briefed and reviewed those facts but as this court said in 20 uh 2001 in Lamka versus Sorrell once the predicate facts have been established in law enforcement 1983 case the reasonableness of the officer's conduct is a question of law and as a question of law it is appropriate to be decided upon summary judgment council would you pull the mic down just a little bit yes sorry I'm very short here it's a question of of qualified immunity qualified immunity is best described in Malley versus Briggs where the supreme court said that qualified immunity protects all but the plainly incompetent or the ones who are knowingly violating the law and that there is no cause of action for bad guesses in gray areas but rather only liability if there is a transgression of a bright line on January 25th 2016 detective Clark did his job he investigated a call related to a shooting at an elementary school he responded and had some interactions with the appellant on that day the appellant raises five points in his brief the first of which being the initial encounter the initial encounter was nothing but a consensual encounter your honors the case law that is cited by the appellant and that he spoke with you at length about especially us versus steward which was an eighth circuit case actually judge Colleton you wrote the opinion in steward I believe had to do with the truck that was parked in a sketchy area that nobody had done anything wrong in that truck but the officer came up behind it turned on his lights went to the window took the gentleman's identification talked to him he said he was trying to have an affair there were some oddities there but he took that identification he went back to his car just like a police officer would if they had actually pulled you over went to his car ran the identification ran the license plate and came back but this court held that that entire encounter was consensual until the time that the officer asked the gentleman to get out of the car when stewart was asked to get out of the car because the officer upon running the identification found that he had an outstanding warrant then it became a seizure only when there is a seizure is the fourth amendment even implicated if you can run the in a case like council what would have been the reasonable suspicion to continue to to for the second seizure or what could be described as the second encounter the second encounter at the at the um off ramp if if the first encounter was innocent just simple investigation just finding out who this person is why wasn't he free to go he was free to go your honor there was then there then what created the new basis for a stop so we have to look at the totality of the circumstances this court in usb quinn stated that separating out individual factors is fatal to an appellant's claim the totality of the circumstances here show from the beginning that there were oddities that built upon each other the appellant wants you to look solely at the fact that he turned around and that this was either provoked or unprovoked all of that is irrelevant we have i thought you said we look at the totality it is a totality of those things be irrelevant well provoked versus unprovoked flight the cases that he cited to only have to do with whether or not that provoked or unprovoked flight were standing alone can create a reasonable suspicion and that's why i say it's relevant because all of those cases are asking if i ran from you because i'm trying to avoid you can that standing alone equal reasonable suspicion all right i understand why don't you go back to what in the totality established reasonable suspicion thank you we start at the very beginning so terry notes terry versus ohio notes that not uh that there are going to be times when innocent people are questioned it's it's just a fact of life but that's what terry acknowledges expressly terry says if you don't have enough facts upon talking to somebody to create probable cause then that person has to be free to go which doesn't give the police the license to follow you until you do something suspicious enough for them to stop you again i understand your honor here's how the the facts played out and really there's no dispute about what happened between the appellant and and detective clark detective clark received a call that there was a shooting in the vicinity of a school that shooting was reported to come from a wooded area between arrest stop and the school property when they responded to that location the appellant was there not only was he the only individual present at the stop that they could visually see not the only car but the only person they could visually see he was seated directly at the edge of the woods not you know right where the shots were alleged to have been fired when they came up and spoke with him he admitted that he was armed with a weapon they ran his identification they returned it to him they left to continue their investigation what struck them as strange after that point was number one detective clark's experience in dealing with former military members was that they're usually very helpful it was very strange to him when he came out that the appellant left the scene to austin clark he believed that the appellant left in an urgent manner but what help was he going to provide he wasn't a police officer he was not looking for a suspect he provided the help that he could by giving them accurate information he did the the issue for detective clark though is that in his training and his experience as a law enforcement officer he had not seen people leaving the scene of an investigation that was into a serious crime like shooting at a school district without making any further contact with the law enforcement he wasn't required to but terry says even an accumulation of innocent acts can result in reasonable suspicion because detective clark believed that believing was an oddity and that the appellant left urgently in his opinion they followed they had been told he was going to chicago he was speeding he was not he was not but what what turned it into urgency that is that's how detective clark in his experience believed he was leaving he it was a very odd situation for somebody to leave when you're walking around asking questions not only because once the officers have asked you questions and they get up and move away are you obligated to wait for them to uh to to tell you you're free to leave i thought that you weren't being uh seized so when officer turns their back and starts to walk away you're free to go yes the what i'm saying is not that what he did wasn't innocent i'm saying that it raised suspicions was it reasonably was it a reasonable suspicion was it articulable you know because you're talking about reasonable suspicion you have to always remember it must tie to some criminal act what's the criminal act he got up and left tell me how that act points towards a reasonable suspicion that a crime is afoot the reasonable suspicion starts at the very beginning of this encounter with all of the things that had led up to the point when they right you have but listen you have a shooting it's at least 12 minutes old you know it's reasonable to think that guys don't just shoot and just hang around generally speaking so you go to a place where 12 minutes ago we we go and approach him you talk to him nothing wrong with that he hands you his id um you know at this point retired military who he is and he has a concealed carry permit now you never ask him politely do you have your gun on you may we see the gun all those things which could have been done just in an ordinary course right if you and none of those questions are asked instead it turns into this conversation where there's a really kind of an inappropriate conversation at the end and then you say it's suspicious because the person who feels that he's been singled out because of his race and the feedback's not entirely positive didn't hang around to get permission to leave and you say that's suspicious and i'm saying okay it's suspicious like to what crime how does it tie together sure it all ties back to what they're investigating because they had come to him they had asked him now they now know he's armed they know he was in the vicinity they don't have probable cause to stop him at that point but when they come out from the rest area and they see that he's left the supreme court in hernandez versus mesa says you have to look to what the officer's training was what did the officer know it is relevant what he believes is unusual so along with all of the peculiarities up to that point now we have a gentleman who in detective clark's experience would normally not be leaving the site of an investigation not that he wasn't allowed to innocent acts under terry versus ohio can still create a reasonable suspicion they decided to follow him to see if he was fleeing for some reason upon coming onto the freeway behind him where he's headed north the direction he said he was headed he then exits the freeway and starts going back in the opposite direction that's another curiosity another suspicion that is raised why would somebody who has told us at the stop that they're headed to chicago now is turning around after leaving in that direction which seems reasonable but now all of a sudden they're going in the exact opposite direction that they've told us following that as they're following the appellant detective clark says he could see inside of the vehicle that the appellant was moving around more than what would be if you're going to grab something looking at as he described in his deposition as an excessive amount of movement and then this gentleman pulls over by himself on a rest stop or at a at an exit ramp all of that built to the point where a seizure under terry was appropriate and they had reasonable suspicion based upon the totality of all of those circumstances to in fact stop and investigate detective um detective clark had reasonable suspicion to stop uh the appellant and investigate further to see whether or not that gun had been fired whether what is the different reasonable suspicion for the second stop than the first changing direction movement in the truck and leaving the rest stop those are the three things that raised detective clark's suspicion and then pulling over by yourself he wasn't pulled over he admits that he voluntarily how many how many police cars were part of this detective clark was the only one following but he had called for backup i believe there were one or two other cars in the vicinity that came up on it but the when we look at everything that officer clark was dealing with and evaluating um and trying to find what the appellant agrees is a very serious crime trying to find if this individual had something to do with it all of that was reasonable under under hodari um and mildenhall and stewart all of these were justified reasons to stop him when we get to the stop officer clark detective clark knowing that the appellant is armed did draw his weapon and have it in a low ready uh position that low ready position was shown on this is not a clearly established right the appellant points us to the fact that the district court noted that in um in their opinion uh but the real issue here is that the black butter law in the eighth circuit is that raising a gun pointing it without the intent or an attempt to shoot does not violate an individual's constitutional rights this is not a clearly established right the appellant points us to shannon versus keller which says generally that a suspect is free from um should be free from excessive force in the context of an arrest however shannon goes on to say that's not enough it's a great general principle but you have to is something that has been deemed illegal and in the eighth circuit it's not we have a case the black letter law is that raising a gun pointing a gun is not excessive force it's been it was an older decision but it's been cited as recently as 2016 and 2014 in brown versus moore citing to edwards as the case that is applicable in the eighth circuit the fact that your honors i see my time has expired thank you very much for your time we are asking that you affirm the district court's decision thank you guys it's a shock your rebuttal uh thank you your honor just a couple of quick things uh the first thing is that in that uh uh smith stewart u.s versus stewart the point did not write by the way grunder wrote it so yeah it might be better for the appellee since i didn't write it go ahead uh in in that case there was no challenge to the taking and running of the license i mean i i guess i just read it differently but i mean i read it yesterday on this question and and the there's no allegation in that case that the the court discussed whether running the officer constituted a seizure apparently the the plaintiff didn't just didn't make the argument that that's i read it maybe i'm wrong i'm going to say just a couple of other things one is that uh i think it's of course well established law that this matter has to be viewed from my client's perspective at this time he says the back of my truck was tinted you can't see anybody move around in a tent in it with a tinted window further what what what what would that mean that the officers already knew he had a gun i mean what what what are they suspicious about he they already know he's got the gun uh so that that doesn't seem to add anything to me do they know he has a gun or only know that he has a permit to have one well that's a good question i guess they didn't say and i would say the common way the officers do the gun business with the concealed carry is they say i may i remove your gun sir because they don't want the subject to pull his gun out of his holster because he'll plug him if he chooses to they say raise your arms and then they take the weapon away is how it's done it's my understanding my co-counsel is the next policeman i think he would support that uh but but on that why couldn't they be legitimately investigating the shooting by checking out his gun oh i think they could have asked him sir would you mind if we smelled your gun i think they could have done that absolutely in fact that's how the thing ended the uh that's the risk stuff i think so yes but since he left why couldn't they do it later well i think it's the the point of judge erickson which is it's over at that point why is it over they still haven't figured out who was the shooter well because they're not investigating what they're doing at that point is targeting my client i mean this is this is a response i believe to the argument that that's what's driving this this conduct at the second stop they're targeting my guy because of the argument what's the proof of that well it's the totality of the i mean it's something that's for the jury causality great question that goes to my fourth argument which is the equal protection argument causality is for the jury we certainly have the fact that the argument occurred and we have uh that there's nothing else thank you your honor i'm sorry it's not proof well but it's i think it's enough to take it to the jury that that that's my that's my argument thank you sir thank you no more questions thank you counsel court thanks all counsel for your presence and the argument you provided to us the briefing we'll take the case under advisement